# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVNIA

| WALTER BASS, | : | No. 3:16cv1407 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| A. PICKETT CONSTRUCTION, INC.; | : | |
| and JAMES ZAVASKAS, | : | |
| Defendants | : | |

## **MEMORANDUM**

Before the court is the defendants' motion for summary judgment filed on April 26, 2017 pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Count I of the plaintiff's amended complaint filed on February 6, 2017, alleges Title VII retaliation against A. Pickett Construction, Inc., (hereinafter "employer"). Count II alleges Pennsylvania Human Relations Act retaliation against both defendants.[1]

The parties have briefed their respective positions and oral argument was held on defendants' motion on August 10, 2017. The motion is thus ripe for disposition.

---

[1] Plaintiff's complaint also contains a sexual harassment/hostile work environment claims. Plaintiff now indicates he is not proceeding with his sexual harassment/hostile work environment claims. (See Doc. 33 at 12 n.5.) Thus, summary judgment will be granted as unopposed regarding these claims.

**Background**[2]

Plaintiff worked for employer beginning from October 2015 to December 21, 2015. (Doc. 30 ¶ 12, 18 ). No evidence or allegations of record reflect any issues with plaintiff's work quality, showing up for work, or timeliness. Disputed issues of material fact exist as to whether plaintiff was a good employee. (See Doc. 33-1 ¶¶ 114-116).

Michael Gill (hereinafter "Gill") was plaintiff's supervisor. (Doc. 30 ¶ 3). During plaintiff's employment Gill allegedly made numerous inappropriate and sexually offensive comments, gestures, and jokes, including but not limited to comments about Gill's penis; putting a tape measure between plaintiff's face and Gill's groin and saying plaintiff was "thirty-three inches away from being a cocksucker;" and banging under a table and saying plaintiff's mother was under the table, implying plaintiff's mother was engaging in oral sex with Gill. See generally (Doc. 20) (amended complaint). Gill allegedly "asked [plaintiff]...who kicks [your] sister in the back of the head," to which plaintiff responded "what are you talking about?" Gill allegedly replied "I heard that's how you circumcise a

---

[2] For purposes of this short background section we cite to plaintiff's amended complaint, his brief in opposition to the motion at bar, and his counter statement of material and disputed facts. While we will examine the facts in the light most favorable to the non-moving party, we make no determination as to the veracity of the matters asserted in this background section.

hillbilly is by kicking your sister in the back of the head.  So was it your father or your brother?"  (Doc. 33-1 ¶ 27).

Plaintiff alleges that on December 18, 2015 he complained to management about Gill's pervasive and sexually offensive comments and conduct.  (Doc. 20 ¶ 17).  Next time he reported for work defendant James Zavaskas (hereinafter "Zavaskas") fired him on the spot (Doc. 30 ¶ 52), allegedly saying that complaining about Gill's conduct was insubordination and the complaints of sexual harassment were the reason for plaintiff's termination.  (Doc. 33-1 ¶¶ 101-107).  In the same meeting plaintiff alleges he complained again about Gill's conduct to Zavaskas.  Zavaskas allegedly said he "didn't care."  Notably, Zavaskas co-owns A. Pickett Construction, Inc.  (Doc. 30 at 1).

Subsequently plaintiff sued employer, and later added Zavaskas, for same-sex sexual harassment under Title VII and the Pennsylvania Human Relations Act (hereinafter "PHRA"), claiming sexual harassment by his supervisor, Gill.  Zavaskas' alleged firing of plaintiff in retaliation for reporting Gill's conduct gave rise to a retaliation claim against both defendants.  Only the retaliation claim remains in the case.[3]

Defendants moved jointly for summary judgment on both counts, bringing the case to its current posture.

---

[3] See n.1.

**Jurisdiction**

We have subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.  Plaintiff initially proceeded under Title VII and the PHRA.  He has exhausted his administrative remedies for both claims by dually filing Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC) and the Pennsylvania Human Relations Commission by filing a lawsuit within 90 (ninety) days of receiving his Notice of Right to Sue letter from the EEOC, and by bringing the case at bar after his PHRA claims were pending for at least 1 (one) year.  (Doc. 20 ¶ 5).  Thus, we properly exercise supplementary jurisdiction over his state claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u>

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.'" Walden v. St. Gobain Corp., 323 F.Supp. 2d 637, 641 (E.D. Pa. 2004) quoting

Stewart v. Rutgers Univ., 120 F.3d 426, 431 (3d Cir. 1997). "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this 'is clearly a factual question,' Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987), summary judgment is in fact rarely appropriate in this type of case. Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' Id. See Sempier v. Johnson & Higgins, 45 F.3d 724, 732-33 (3d Cir. 1995) (cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')." Marzano v. Computer Science Corp., 91 F.3d 497, 509-510 (3d Cir. 1996).

Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts such as Title VII. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts...generally interpret the PHRA in accord with its federal counterparts...").

**Retaliation claim**

The elements of a retaliation claim under § 704(a) of Title VII are: (1) plaintiff engaged in protected employee activity [including protesting discriminatory employment practices, as by complaining to management]; (2)

6

adverse action by employer either after or at the same time as the employee's protected activity; and (3) A causal link between the protected activity and the adverse action. Abramson v. William Patterson College of N.J., 260 F.3d 265, 286 (3rd Cir. 2001). See also Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (describing the third requirement as a "causal connection").

**Discussion**

**I. Protected employee activity**

Defendants attack the first element contending plaintiff did not engage in a protected activity in that he did not complain about discrimination "because of sex." See generally Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75 (1998). Defendants further contend plaintiff's subjective belief to the contrary does not count.[4] Plaintiff counters that defendants' logic fails in the face of case law. We agree.

The anti-retaliation provision of Title VII provides safeguards for those who participate in certain Title VII proceedings (the participation clause) and those opposing discrimination made unlawful by Title VII (the opposition clause). Moore v. City of Phila., 462 F.3d 331 (3d Cir. 2006), citing Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006).

---

[4] Essentially defendants argue that plaintiff has no retaliation claim because Gill's alleged conduct does not amount to sexual harassment under the stringent standards set forth in Oncale.

Third Circuit precedent holds that an employee's objectively reasonable belief that the activity he or she opposes constitutes unlawful discrimination satisfies the first element of retaliation claims under Title VII. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir.1996) (retaliation plaintiff must "act under a good faith, reasonable belief that a violation existed"). Only if no reasonable person could have believed that the underlying incident complained of constituted unlawful discrimination is a complaint unprotected. Clark County v. Breeden, 532 U.S. 268, 271 (2001) (*per curiam*) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination). Plaintiff need not prove the merits of an underlying discrimination claim in order to seek redress for retaliation. Id.

The stringent legal standard for same-sex sexual harassment set forth by the Supreme Court in Oncale is not applicable in this case because plaintiff is not pursuing a claim for sexual harassment. However, in order to succeed on his retaliation claim plaintiff must prove that, at his meeting with Zavaskas, he acted with objective good faith belief that he protested discriminatory conduct on the part of Gill. Viewing the facts in the light most favorable to the non-movant, we find it reasonable for a man in plaintiff's position, who was treated in the manner he alleges, by Gill and Zavaskas, to believe *objectively* and *in good faith* that he

8

was sexually harassed, according to the common meaning and understanding of those words, and was then fired as retaliation for reporting sexual harassment. This question is one of genuine material fact for the jury to decide.

## II. Adverse employment action

The second element is not challenged in this case; clearly termination on plaintiff's next work day subsequent to his alleged complaint of sexual harassment is a materially adverse action on the part of an employer.

## III. Causal link

Defendants next argue against the third element, causal link beween the complaint and the firing. Defendants argue that Zavaskas lacked knowledge of the substance of plaintiff's complaint at the time of termination. Zavaskas testified that he fired plaintiff because another employee, John Rynkiewicz, told him that plaintiff, upset by one of Gill's sexual jokes on December 7, 2015, had said, "if somebody makes another comment like that he [plaintiff] is going to go out to his truck and get his gun." (Doc. 30 ¶ 13). Plaintiff denies making this statement and claims not to own a gun (Doc. 33-4 at 53-54). Plaintiff claims he was told he was fired for complaining about Gill's sexual harassment. His version of the facts is supported by the statements of Shana Burks, who plaintiff

refers to as his common-law wife,[5] (Doc. 33-14), and Vila Coleman, his mother (Doc. 33-13), both corroborate plaintiff's version of the facts. Both statements are plausible and could affect the outcome of the case, both present questions of credibility for the jury to decide.

**Conclusion**

After a careful review, the court finds multiple genuine issues of material fact exist in this case. The questions of whether plaintiff's complaining to Zavaskas was protected activity, whether plaintiff's belief was held in good faith, and whether that belief was or was not reasonably objective, are all matters for the finder of fact.

Defendants' arguments that Zavaskas was unaware of the substance of plaintiff's employment complaints about Gill's conduct, whether plaintiff said he was going to get a gun, and if so, whether Zavaskas fired the plaintiff because he said he was going to get a gun, are more genuine issues of material fact for the jury to decide. Accordingly, the motion for summary judgment on the retaliation claim will be denied.

---

[5] Plaintiff testified at deposition on January 19, 2017, that he and and Ms. Burks have lived together for (8) eight years, "...so I just call her my wife, common law married." (Doc. 33-4 at 14). However, Pennsylvania abolished common-law marriages contracted on or after January 2, 2005. 23 PA. CONS. STAT. ANN. §1103.

An appropriate order follows.

Date: August 18, 2017              s/ James M. Munley
                                   **JUDGE JAMES M. MUNLEY**
                                   **United States District Court**